IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN PABLO and BONNIE COURSEY, on behalf of a putative class,<br><br>Plaintiffs,<br><br>v.<br><br>SERVICEMASTER GLOBAL HOLDINGS, INC., et al.,<br><br>Defendants. | No. C 08-03894 SI<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

On August 14, 2009, the Court heard oral argument on plaintiffs' motion for class certification. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the motion is DENIED.

**BACKGROUND**

The subject of this litigation is an employment dispute over unpaid wages brought by former and current employees against defendants ServiceMaster Global Holdings, Inc., the ServiceMaster Company, the Terminix International Company, L.P., and Terminix International, Inc. (collectively "Terminix").

On May 30, 2008, plaintiff Ruben Pablo filed a putative class action complaint in Marin County Superior Court against defendants. Defendants removed the action to federal court on August 14, 2008, invoking this Court's diversity jurisdiction. The complaint was amended once in order to add named plaintiff Bonnie Coursey, such that the operative complaint is now the Amended Complaint ("AC"), which was filed on August 12, 2009.

Plaintiffs have brought suit on behalf of all individuals employed by Terminix as inspectors[1] in California from May 30, 2004 to the present. AC ¶ 16. The gravamen of the complaint is that defendants avoided paying inspectors overtime compensation by improperly classifying them as exempt employees, failing to provide rest breaks, and failing to reimburse necessary work-related expenses.

**1.     Payment Structure**

Under California law, a company cannot provide termite control services before a licensed inspector has performed an inspection. Cal. Bus. & Prof. Code § 8516(b). No later than ten business days after an inspection, the company must file a report on a form prescribed by law. Cal. Bus. & Prof. Code § 8516(b).

Terminix inspectors do not perform pest control services, i.e. liquid, bait, or fumigation. Instead, they perform the inspections that California law requires as a prerequisite for selling such services. The actual services are provided by Terminix "termite technicians" or "pest control technicians." If, after the inspection, a customer agrees to buy a Terminix service, the inspector receives a percentage of the sale. Decl. of Matthew Canonica in Supp. of Defs. Opp. ("Canonica Decl.") (ex. 34 in Defs. Compendium of Evidence ("Compendium")) ¶ 10. If the potential customer does not buy any services, Terminix and the inspector make no money from the inspection. *Id.* ¶ 10. Terminix trains its inspectors to tell prospective customers that they will be checking for signs of a termite infestation and "conducive conditions" for an infestation to occur. *Id.* ¶ 14. The "conducive conditions" discussion is supposed to prepare potential customers to hear a sales pitch after the inspection about buying preventative services, even if the inspector found no signs of infestation. *Id.* ¶ 14.

Terminix classifies all of its inspectors as "exempt" employees for purposes of California's overtime requirements. Defendants claim that inspectors are paid entirely by commission. Canonica Decl. ¶ 6. Each month, inspectors receive a $2000 advance on their commissions. Decl. of Patrick Slaughter ("Compendium of Evidence," ex. 32) ¶ 7. If they do not make enough commissions to cover

---

[1] Defendants refer to the "inspector" job position as "outside sales professionals." According to defendants, individuals in this position hold various titles: "field representative," "termite & pest specialist and real estate specialist," "sales representative," and "field inspector."

2

their advance, the deficit is deducted from their advance the following month. *Id.* Plaintiffs characterize the monthly payment as a base monthly salary. They agree, however, that if they made less than $2000 on commissions, the difference would be applied to future commissions.[2] Coursey Decl. ¶ 5.

Some inspectors performed "renewal" or "re-inspections" for existing customers. Terminix provided these inspections to customers a year after their first termite control treatment. Hersh Decl., ex. 5 (Decl. of Stanley Mohamed Bapu ("Bapu Decl.")) ¶ 15. Terminix paid $10 for each renewal inspection. *Id.* ¶ 15.

Some inspectors also performed "escrow" inspections on properties that are for sale. Bapu Decl. ¶ 16. Inspectors received a commission of 20% on a flat fee of about $150 for escrow inspections. *Id.* If the homeowner decided to buy a Terminix treatment, the inspector would also earn a commission on that sale. *Id.*

## 2. Workday Structure

Coursey was employed as a termite inspector at Terminix's Stockton office from April 2003 to June 2008.[3] She claims that each day, she was expected to complete four inspections. Decl. of Nancy Hersh in Supp. of Pl. Mot. ("Hersh Decl."), ex. 4 ¶ 6. She would begin each day by reporting to the office, where she would receive her schedule of inspections. *Id.* She drove to the inspection sites, where she performed termite inspections. *Id.* The inspections included taking measurements and notes, and sketching the layout of the building. *Id.* As described above, Coursey was required by state law to complete an inspection report, which included a scale diagram based on her sketch. *Id.* She used a 155-page code book provided by Terminix to create the reports, which she often completed at home. *Id.* Coursey had to submit the final report within two days and was personally subject to fine, loss of her license, and other penalties if her reports did not comport with state law. *Id.*

---

[2] Plaintiffs claim that "[w]ith a few exceptions, Inspectors make the majority of their income from their base rate of pay." Pl. Mot. at 5:19-21. There is no support in the record for this assertion. Plaintiffs cite ¶ 5 of Bonnie Coursey's declaration (exhibit 4 to the declaration of Nancy Hersh), but Coursey does not provide any information about how she made most of her income.

[3] Coursey stopped going to work at Terminix in August 2007 because of a neck injury. Ngo-Bonnici Decl., ex. 2 (Coursey Depo.), Tr. 40:8-14. Plaintiffs allege, and defendants do not dispute, that Coursey was placed on disability on September 4, 2007. AC ¶ 7.

Coursey began inspections by greeting the customer, which took about ten minutes. *Id.* The inspections themselves generally took between one and three hours. *Id.* ¶ 7. After the inspection, Coursey would meet with the customer and point out any infestations that she had identified in her inspection. *Id.* If she found an infestation, the customer would usually buy a service; if she found no infestations, customers were less likely to buy preventative services. *Id.* This final conversation with the customer usually took about twenty minutes. *Id.*

Pablo worked at Terminix's Marin branch from December 2004 to August 2005. He did not perform more than three inspections a day. Decl. of Monique Ngo-Bonnici in Supp. of Defs. Opp. ("Ngo-Bonnici Decl."), ex. 1 (Pablo Depo.), Tr. 150: 17-18. If he found no infestation, he did not talk to customers for more then ten minutes. *Id.* at Tr. 233:16-19. He tried to keep these conversations brief because customers would get irritated if he tried to sell services after he did not find an infestation. *Id.*

Defendants point out that in addition to receiving assignments from the branch office, inspectors were expected to find additional customers. Coursey testified at deposition that she would identify sales leads by going door to door, visiting realtors, and sending out letters. Ngo-Bonnici Decl., ex. 2 (Coursey Depo.), Tr. 127: 23-25. She would also try to schedule termite inspections for individuals who received other Terminix services. *Id.* at 128: 3-6. When customers agreed to have a termite inspection, Coursey scheduled the appointments herself. *Id.* at 140: 5-7.

Defendants have provided 32 declarations from individuals who are currently employed as Terminix inspectors. *See* Compendium, exs 1-32. These declarations reveal that there are variations in how inspectors spend their workdays. Some inspectors state that they perform more inspections during summer months (when the warm weather makes termites swarm, making them more visible to homeowners) and that business has been slower recently because of the slow economy. *See, e.g.*, Decl. of John T. Dukes ("Dukes Decl.") (Compendium, ex. 9) ¶ 24. While Coursey had to complete four inspections a day, some inspectors stated that because of the economic slowdown, they now only perform two or three inspections each day. *See, e.g.*, Decl. of Jonathan Epstein ("Epstein Decl.") (Compendium, ex. 10) ¶ 10. Some inspectors said that inspections take between 30 minutes to 1.5 hours, while others said that inspections take from 1.5 hours to 4 hours. *Compare* Epstein Decl. ¶ 21 *with* Decl. of Norberto Contreras ("Contreras Decl.") (Compendium, ex. 5) ¶ 32. Inspectors also

reported taking different amounts of time to complete reports. While some inspectors take between 10 and 25 minutes on each report, others said that it takes 30-50 minutes to complete a report. *Compare* Decl. of Brian Brandner ("Brandner Decl.") (Compendium, ex. 6) ¶¶ 39-40 *with* Decl. of Dan Sisto ("Sisto Decl.") (Compendium, ex. 25) ¶ 24.

Plaintiffs allege five claims for violations of the California Labor Code and Wage Orders: (1) failure to pay overtime (§§ 510,[4] 1194, 1197), (2) failure to pay full wages when due (§§ 220, *et seq.*, 1194, 1198, 1199), (3) failure to keep proper records (§§ 226, 1174, 1174.5, Wage Order No. 4), (4) failure to provide meal and rest breaks (§§ 512, 226.7), and (5) failure to indemnify for necessary expenditures (§ 2802). Plaintiffs also allege that these violations constitute unfair business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq.* The named plaintiffs now move for class certification.

**LEGAL STANDARD**

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See* Fed. R. Civ. P. 23; *see also Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Federal Rule of Civil Procedure 23(b) have been met. *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

A plaintiff must also establish that one or more of the grounds for maintaining the suit are met

---

[4] Unless otherwise noted, all statutory citations are to the California Labor Code.

5

under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie*, 524 F.2d at 901 n.17. However, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, 7.26 (4th ed. 2005). Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed. R. Civ. P. 23. *See Blackie*, 524 F.2d at 901 n.17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

**DISCUSSION**

The Court will consider whether named plaintiffs Coursey and Pablo can represent the putative class for any of the six causes of action alleged in the Amended Complaint. Named plaintiffs contend that they can satisfy each of the requirements of Rule 23(a) as well as the "commonality" and "superiority" requirements of Rule 23(b)(3).

**1.     Unpaid Overtime**

Plaintiffs' claim for unpaid overtime depends on their allegation that Terminix misclassified all of its inspectors as exempt employees. The Court finds that resolution of this claim on a class basis is not appropriate because plaintiffs cannot satisfy the commonality requirement of Federal Rule of Civil Procedure 23(b)(3).

Rule 23(b)(3) provides that the plaintiffs must show that common questions of law and fact "predominate over any questions affecting only individual members." This "'inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The inquiry focuses on "the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

California law exempts "outside salespersons" from overtime requirements. Cal. Code Regs. tit. 8 § 11010(1)(C). An outside salesperson is an employee who "customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Cal. Code Regs, tit. 8, § 11010(2)(J). Courts must evaluate whether an employee is properly classified as a salesperson by "inquiring into the *realistic* requirements of the job." *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 802 (1999) (emphasis original). "[T]he court should consider, first and foremost, how the employee actually spends his or her time." *Id.*

If evidence in the record suggests that resolution of this issue will require inquiries into (1) how much time each employee spent in or out of the office and (2) how each employee performed her job, then common issues may not predominate. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009) (class certification properly denied where employees were granted "almost unfettered autonomy" to do their job). When an employer uses a uniform policy to classify a class of employees as exempt, courts may weigh the policy as a factor in favor of certification, but it is not dispositive. *In re Wells Fargo Home Mortgage Overtime Pay Lit.*, 571 F.3d 953, 959 (9th Cir. 2009). The central

7

inquiry is "where the individual employees actually spent their time." *Id.* at 959.

In this case, the evidence before the court presents disputed facts about the degree of discretion Terminix inspectors have in setting their schedules. The declarations submitted by both parties reflect variety in activities such as the number of inspections they perform each day, the number of hours they work each week, the time it takes them to complete inspections and reports, and the amount of time they spend with potential customers during site visits. These factors weigh against a finding that common issues predominate because the Court would have to examine the work schedules of every inspector to determine how much time he or she spent on sales activities outside the office.

Plaintiffs respond that despite these individual variations in workday schedules, all inspectors spend more than half their workdays performing inspections and writing reports. Plaintiffs contend that writing reports and inspecting sites are not sales activities. No matter how inspectors apportion the rest of their time, plaintiffs argue, they must spend less than half of their workdays on these non-sales activities and cannot qualify for the outside salesperson exemption. In plaintiffs' view, common issues predominate because the question of whether report writing and inspections are sales activities is dispositive of whether inspectors were properly classified as outside salespeople.

In principle, the Court agrees with plaintiffs that if all inspectors spent more than half their workdays on these two activities, the question of whether the activities constitute sales is a significant aspect of the case that would be common to all inspectors and susceptible of class treatment. Plaintiffs' argument fails, however, because the record does not support their assertion that all inspectors spent at least half their workdays performing inspections and writing reports.[5] For example, Helio Costa states in a declaration that he usually works 40-48 hours a week. Costa Decl. ¶ 11. Business has been slow

---

[5] At oral argument, plaintiffs provided the Court with a chart that purports to analyze all defense witness's estimates of how their workdays are apportioned. This document is not helpful because it does not separate estimates regarding reports and inspections from all other activities. For example, Helio Costa states in his declaration that "Overall, I estimate at least 75% of my work time [is spent] generating sales by driving to potential customers' properties, conducting free inspection[s] to determine what products or services to recommend and sell, speaking with and advising customers on products and services to purchase, drafting inspection checklists/reports, distributing sales materials in the field, and calling potential customers." Costa Decl. ¶ 28. Plaintiffs' chart states that Costa says he spends 75% of his time on inspections and reports. This is not accurate. Costa's 75% estimate includes "distributing sales materials in the field," an activity that cannot be described as writing reports and performing inspections.

8

at his Terminix branch; since February, he has done one or two inspections a day. *Id.* ¶ 11. Each inspection takes between one and 1.5 hours. *Id.* ¶ 21. Reports take him between 25 and 40 minutes each. *Id.* ¶¶ 25-26. Costa's estimates demonstrate that he does not consistently spend more than half of his workday on reports and inspections. In a 40-hour week, he works eight hours a day. If he performs one inspection that lasts an hour, followed by 30 minutes on the report, he has spent only 1.5 hours out of an 8-hour day on these two activities.[6] The record therefore does not support plaintiffs' assertion that all inspectors routinely spend more than half their time on inspections and reports.

The declarations submitted by both parties reflect substantial variation in how inspectors spend their time. Terminix's uniform policies for classifying inspectors, determining compensation, and other employment practices do not predominate over the hundreds of individualized inquiries the Court will have to perform to determine whether inspectors spend more than half their workdays doing sales outside the office.

Accordingly, the Court finds that common issues do not predominate over individual ones and plaintiffs have not established that they meet the requirements of Rule 23(b)(3) and DENIES plaintiffs' motion on this issue.

## 2.   **Rest and Meal Break Violations**

Plaintiffs concede that their rest and meal break claim depends on their overtime claim. Plaintiffs claim that class certification is appropriate on their rest and meal break claim because if Terminix misclassified inspectors as outside salespeople, Terminix necessarily violated its statutory duty to provide rest and meal breaks. The Court finds that class certification is not appropriate on this claim for the same reasons discussed in the foregoing discussion of plaintiffs' overtime claim. Accordingly, the Court DENIES plaintiffs' motion as to their rest and meal break claim.

---

[6] Plaintiffs contend that the time Costa spends scheduling the inspection with the potential customer and driving to the house should be included in this calculation. Costa does not provide estimates for the amount of time he spends scheduling and driving to each appointment. In the foregoing example, Costa would have to spend more than 2.5 hours on these activities for each inspection, which is improbable and not supported by the record.

9

### 3. Record Keeping Violation

Plaintiffs also concede that certification of their derivative claims for waiting time penalties (second cause of action), failure to provide itemized wage statements (third cause of action) and unfair business practices (sixth cause of action) is warranted only if their rest and meal break claims can be certified. Accordingly, the Court DENIES plaintiffs' motion as to these claims.

### 4. Reimbursement Violation

Plaintiffs contend that Terminix violated § 2802 by failing to reimburse inspectors for the money they spent on gas to travel to inspections. It is not clear to the Court whether plaintiffs will pursue this claim on a class basis in light of the disposition of this motion. Accordingly, the Court DENIES plaintiffs' motion on this issue <u>without prejudice to refiling if plaintiffs intend to pursue class certification on this issue</u>. Plaintiff's counsel may advise the Court at the August 17, 2009 case management conference as to how they wish to proceed on this claim.

## CONCLUSION

For the foregoing reasons and good cause shown, the Court DENIES plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

Dated: August 17, 2009

SUSAN ILLSTON
United States District Judge