IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN PABLO, et al., | No. C 08-03894 SI |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT – BONNIE COURSEY** |
| v. | |
| SERVICEMASTER GLOBAL HOLDINGS, INC., et al., | |
| Defendants. / | |

On March 18, 2011, the Court heard argument on defendants' motion for partial summary judgment on the claims of plaintiff Bonnie Coursey. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES defendants' motion.

**BACKGROUND**

**I.    Procedural background**

The subject of this litigation is an employment dispute over unpaid wages brought by former and current employees against defendants ServiceMaster Global Holdings, Inc., the ServiceMaster Company, the Terminix International Company, L.P., and Terminix International, Inc. (collectively "Terminix"). On May 30, 2008, plaintiff Ruben Pablo filed a putative class action complaint in Marin County Superior Court against defendants. Defendants removed the action to federal court on August 14, 2008, invoking this Court's diversity jurisdiction. Just under one year later, and having been granted leave by the Court, plaintiff Pablo filed the operative complaint, along with newly named plaintiff Bonnie Coursey. *See* Docs. 28, 41, 46.

Plaintiffs have brought suit on behalf of all individuals employed by Terminix as "inspectors"[1] in California from May 30, 2004 to the present. Am. Compl. ¶ 16 (Doc. 46). Plaintiffs allege five claims for violations of the California Labor Code and Wage Orders: (1) failure to pay overtime (§§ 510, 1194, 1197), (2) failure to pay full wages when due (§§ 220, et seq., 1194, 1198, 1199), (3) failure to keep proper records (§§ 226, 1174, 1174.5, Wage Order No. 4), (4) failure to provide meal and rest breaks (§§ 512, 226.7), and (5) failure to indemnify for necessary expenditures (§ 2802). Plaintiffs also allege that these violations constitute unfair business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et. seq.

On August 17, 2009, the Court denied plaintiffs' motion for class certification. Doc. 49. The Court found that resolution of this claim on a class basis was not appropriate because plaintiffs could not satisfy the commonality requirement of Federal Rule of Civil Procedure 23(b)(3).[2] On September 28, 2010, defendants filed a motion for partial summary judgment, seeking judgment on four of plaintiff Coursey's claims. On December 23, 2010, plaintiffs filed a renewed motion for class certification.[3] The Court determined that the motions should be consolidated for argument, along with a motion for partial summary judgment in the related case *Bancroft v. Servicemaster* (Case No. 10-628).

## II. Factual background

The gravamen of plaintiffs' class complaint is that defendants avoided paying inspectors overtime compensation by improperly classifying them as exempt employees, failing to provide rest breaks, and failing to reimburse necessary, work related expenses. Defendant has moved for summary

---

[1] Plaintiffs refer to "inspectors"; defendants refer to "outside sales professionals" or "OSPs."

[2] Dozens of individuals who would be class members in this case have since filed suit independently, in eight cases that have all been related by the Court, setting forth claims similar or identical to the claims in this case.

[3] The named plaintiffs moved for certification of a class consisting of:
All persons currently or formerly employed by Terminix to perform termite inspections within the State of California, classified as exempt from overtime wages, at any time during the period of four years prior to the date of the commencement of this action through the date of final disposition of this action.

2

judgment on plaintiff Coursey's first four claims, which depend on a finding that she was misclassified as an exempt employee.

### A. Termite inspections generally

Under California law, a company cannot provide termite control services before a licensed inspector has performed an inspection. Cal. Bus. & Prof. Code § 8516(b). No later than ten business days after an inspection, the company must file a report on a form prescribed by law. *Id.*

Terminix inspectors do not perform pest control services, i.e. liquid, bait, or fumigation.[4] Rather, they perform the inspections that California law requires as a prerequisite for selling such services. Inspectors perform inspections on both residences and commercial property. Decl. of Peter Publico in Supp. of Def. Oppo. (Ex. 41 in Defs. Compendium of Evidence ("Compendium"), Doc. 151), ¶16. Although Terminix has salaried employees on staff who perform "renewal" or "re-inspections" for existing customers, many inspectors also perform these renewal inspections. Decl. of David Janes in Supp. of Def. Oppo. (Ex. 28 in Compendium), ¶ 19. Terminix provides these inspections to customers a year after their first termite control treatment. Order Denying Pl. Mot. for Class Cert., Doc 49 at 3. Some inspectors also perform "escrow" inspections on properties that are for sale. *Id.*

Terminix offers many initial inspections free of charge, and inspectors are not paid to perform these inspections. If, after the inspection, a customer agrees to buy a Terminix service from the inspector, the inspector receives a percentage of the sale. *See, e.g.,* Decl. of Matthew Canonica in Supp. of Def. Oppo. ("Canonica Decl.") (Ex. 60 in Compendium), ¶ 6. Sometimes, a customer may decide later to call Terminix to purchase a service, in which case the inspector may receive no commission. Decl. of Bonnie Coursey in Supp. of Pl. Oppo. to Def. Mot. for Partial Summ. J. (Coursey) ("Coursey Decl.") (Ex. B in Decl. of Nancy Hersh in Supp. of Pl. Oppo. to Def. Mot. for Partial Summ. J. (Docs. 134–149) ("Hersh Decl.")), ¶ 9.[5] If the potential customer does not buy any services, neither Terminix

---

[4] These services are provided by Terminix "termite technicians" or "pest control technicians."

[5] It is not clear how often a property owner might choose to purchase a service, but the inspector does not receive a commission. Plaintiff Coursey argues that "it was common for a potential customer to order an inspection of his or her home, listen to Coursey's sales pitch, hold off on signing

3

nor the inspector make any money from the inspection. *Id.* ¶ 10.

For renewal inspections, Terminix pays inspectors $10. Coursey Decl. ¶ 7. For escrow inspections, Terminix charges a flat fee of about $150, of which inspectors receive a commission of 20%. Order Denying Pl. Mot. for Class Cert., Doc 49 at 3. If a homeowner decides to buy a Terminix treatment from the inspector after the escrow inspection or renewal inspection, the inspector earns a commission on that sale. *Id.*

Terminix classifies all of its inspectors as "exempt" employees for purposes of California's overtime requirements, pursuant to California's "outside salespersons" exemption. *See* Cal. Code Regs. tit. 8 § 11010(1)(C). Defendants claim that inspectors are paid entirely by commission. Canonica Decl., ¶ 6. Each month, inspectors receive a $2,000 advance on their commissions. Decl. of Patrick Slaughter (Ex. 50 in Compendium) ¶ 7. This "base salary" is treated as "a guarantee against commission" for the first three month of employment, and then a "draw/advance against commission" thereafter. Sales Compensation Plan, Hersh Decl., Ex. CC.

### B.     Plaintiff Coursey's workday

Plaintiff Coursey worked as an inspector at Terminix's Stockton, California branch office from April 2003 until June 2008. Coursey was licensed as both a Branch 3 and a Branch 2 Field Representative, which allowed her to sell both termite and pest control services. Declaration of Joan B. Tucker Fife in Supp. of Def. Mot. for Partial Summ. J. ("Fife Dec."), Ex. A, Depo. of Bonnie S. Coursey ("Coursey Depo., Def. Excerpts"), at TR 290:25-291:4. Coursey never performed termite treatments or fumigation work, and never did any repair work. *Id*. at TR 86:13-86:21.

The parties agree that inspectors spend their workdays performing the following functions: (1) attending a daily sales meeting; (2) driving to, from, and between customer appointments; (3) performing termite and pest inspections; (4) interacting face-to-face with prospective customers (other

---

the contract immediately after the inspection, and call back the branch office to purchase the service. On those occasions, . . . Coursey received no commission." Pl. Oppo. to Def. Mot. for Partial Summ. J. (Coursey), Doc. 133 at 14. In support of this contention, she cites to her own declaration, in which she states that "[t]here were times" that this happened, and in which she provides one example. *See* Coursey Decl. ¶ 9.

4

than while performing termite and pest inspections); (5) filling out termite inspection reports; and (6) prospecting for new sales leads.

Plaintiff Coursey would start her workday at 7:30 a.m. and had sales meetings almost every morning. Other than reviewing her daily schedule, the meetings were plaintiff Coursey's first activity of the workday. The meetings took place at the Terminix office, lasted for approximately half an hour, and often started late. Exs. in Oppo. to Def. Mot. for Partial Summ. J. (Coursey), Ex. A ("Coursey Depo., Pl. Excerpts"), TR 155:20—157:14.

For each workday, plaintiff Coursey was provided with daily time sheets with five two-hour slots on them. Coursey Decl. ¶ 8. Sometimes these slots were prefilled. Depo. of Gil D. Squires, Hersh Decl., Ex. V. Toward the beginning of her employment, Coursey was required to have at least three inspection appointments per day. Coursey Depo., Def. Exceprts, TR 167:12-167:16. Later, she was required to have four. *Id*. at TR 167:6-167:11. During the subterranean termite swarm season, which started in March and ended in June or July, plaintiff Coursey typically had between three and six sales appointments per day. *Id*. at TR 150:14-150:23, 153:6-153:25.

Initially, plaintiff Coursey's territory was located near Stockton, and it would typically take 20 or 30 minutes to drive to an appointment. Later, her territory was expanded, and it could take up to two hours to drive each way. Coursey Depo., Def. Excerpts, TR 175:22–176:4. The inspections could take ninety minutes to two hours each. *See* Coursey Decl. ¶ 10.

After plaintiff Coursey's first year as an inspector, she was asked to take trainees along with her when she performed inspections and sales, sometimes as many as two or three times per week. Coursey Depo., Pl. Excerpts, TR 114:14–115:1. She was required to work every other Saturday. 2006 Standards and Expectations Memo, Hersh Decl. Ex. T.

Plaintiff Coursey was required by law to fill out report worksheets associated with the inspections. *See* Cal. Bus. & Prof. Code § 8516(b). She could spend anywhere from 10 minutes to two hours on each worksheet, but on average she was able to fill them out in 30 to 40 minutes. Coursey Depo., Pl. Exceprts, TR 216:25–217:16. Sometimes she would fill out the work sheets in the office, and sometimes she would fill them out in her car, and sometimes she would fill them out at home. Coursey Depo., Def. Excerpts , TR 155:8–155:12; 242:9–242:12. She would spend another five to twenty

5

minutes reviewing the final copy of the report. *Id.* TR 229:10–229:15; 235:9–235:22.

Plaintiff Coursey would sometimes prospect for new sales leads by going door to door, going to see realtors, sending letters, and calling existing customers. *Id.* TR 127:21–132:23. She would send letters and make calls both from the field and from the office. *Id.* TR 199:2–200:14. She was also required to attend Thursday night calling sessions at the office to attempt to schedule inspections. *See* 2006 Memo; Depo. of Raul M. Ortega, Hersh Decl., Ex. U.

Plaintiff Coursey would work over eight hours per day and forty hours per week, and it was "not uncommon" for her to work as many as fourteen hours in a single day. Suppl. Decl. of Bonnie Coursey, Pl. Reply in Supp. of Pl. Mot. for Class Cert. (Doc. 156), Ex. AAA, ¶ 3.[6] In a declaration, plaintiff Coursey stated that she spent at least 51% of her time in the office, writing reports, and performing inspections, no matter how many inspections she performed that day. Coursey Decl., ¶ 13. She would only spend 20–25% of her time meeting with, selling to, or prospecting for customers. *Id.* ¶ 15. Defendants estimate that plaintiff Coursey always spent at least 51% of her time interacting with customers to make sales, prospecting for sales leads, and performing inspections, if one adds to the time she spent on those activities the appropriate proportion of her driving time.[7] Def. Mot. For Partial Summ. J. at 1.

**LEGAL STANDARD**

**I.    Summary judgment**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and

---

[6] Defendants object to this declaration, along with every other declaration accompanying plaintiffs' reply brief in support of their renewed motion for class certification, as being previously undisclosed. In particular, they argue that "because they withheld their declarations, they have prevented Defendants from conducting meaningful discovery, *including deposing the previously undisclosed declarants*." Objections to Reply Evidence Submitted by Pls. in Support of Their Renewed Mot. for Class Cert. (Doc. 166), at 4 (emphasis original). Because plaintiff Coursey is a named plaintiff, and this paragraph of her declaration relates to a topic central to this litigation and about which she was deposed, this objection is overruled for the purpose of ruling on defendant's motion for partial summary judgment on plaintiff Coursey's claims.

[7] Where "an employee travels to a destination to engage in both sales and nonsales activities, the travel time must be apportioned among the two types of activities." *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 801 (1999).

6

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).[8] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

---

[8] Defendants' motion was filed before the most recent revision of Rule 56 went into effect, but argued after. The standard for granting summary judgment has not changed. As the Committee notes on the recent amendment state:
> Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Citations are to the new rules unless otherwise noted. The Court does not discuss the new rules in more detail, however, as the changes are not relevant to this case.

7

**DISCUSSION**

Defendants argue that plaintiff Coursey was properly classified as an exempt outside salesperson, and therefore that defendants are entitled to summary judgment on all but her reimbursement claims.

California law exempts "outside salespersons" from overtime requirements. Cal. Code Regs. tit. 8 § 11010(1)(C). An outside salesperson is an employee who "customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Cal. Code Regs, tit. 8, § 11010(2)(J). In other words, and in contrast to federal law, California law "takes a purely quantitative approach," looking to the amount of time a person is "engaged in sales activities outside the workplace" rather than looking to "the primary function for which the person is employed." *Ramirez*, 20 Cal. 4th at 789, 797.

Courts must evaluate whether an employee is properly classified as a salesperson by "inquiring into the *realistic* requirements of the job." *Id.* at 802 (emphasis original).

> In so doing, the court should consider, first and foremost, how the employee actually spends his or her time. But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job.

*Id.*

The parties agree that the essential question here is whether plaintiff Coursey's termite inspections are "sales activities" or not.[9] If they are, then plaintiff Coursey spent over half of her work day performing sales activities. If they are not, then she did not.[10]

Plaintiff Coursey argues that *Ramirez* requires the Court first to examine termite inspections

---

[9] The parties disagree about the correct categorization of a variety of other tasks. Of all of these contested activities, the termite inspections took by far the greatest amount of time, and defendant cannot win this motion for summary judgment unless the termite inspections are sales activities.

[10] Defendants also argue that Terminix has a realistic requirement that individuals with Coursey's job description ("Field Representative") spend over half of their working time performing sales activities, including performing inspections. Defendants do not argue that they have a realistic requirement that inspectors spend over half their time performing sales activities if inspections are not included, however.

8

objectively and in isolation, to determine whether "one who only performed" the inspections "could . . . be considered a salesperson." *See id.* at 802. She compares the inspections to a doctor examining a patient. Surely the patient would not want to be treated before being examined and diagnosed; yet the examination is intrinsically separate from any treatment later provided. Defendants argue that plaintiff Coursey has extracted a quotation from *Ramirez* out of context and in a misleading way, and that it is not the holding of *Ramirez*. They argue that it matters how plaintiff Coursey performed the inspections and even what her subjective intent was—if she used the inspections in order to secure sales, then they are not merely incidental to sales activity, they are sales activity. Defendants compare the inspections to a vacuum cleaner salesperson's demonstration of the efficacy of a vacuum cleaner, performed on a prospective customer's dirty carpet.

The Court agrees with plaintiff Coursey's understanding of *Ramirez* and the meaning of the phrase "sales activity." In *Ramirez*, the California Supreme Court analyzed whether "a route sales representative" for a bottled water company was properly characterized as an outside salesperson. *Id.* at 790. The Court said no, explaining that

> Delivery of preordered water bottles or the restocking of 'empties' is not a sales activity in the conventional meaning of the word—one who *only* performed these delivery tasks could not be considered a salesperson. It is true, as Yosemite points out, that failure to properly deliver the product would lead to loss of the customer, but that does not make such delivery a sales activity, any more than an attorney's preparation of a legal brief in order to satisfy and thereby retain a client is a sales activity.

*Id.* at 802 (emphasis original). "[I]ntrinsically nonexempt nonsales work" does not become exempt sales work "based on the fact that it is *incidental to* sales." *Id.* at 797 (emphasis original).

Termite inspections are a service distinct from termite fumigation and the other removal and protective services that inspectors sell, and they are intrinsically nonexempt nonsales work. People seek out termite inspections and many are willing to pay for them as standalone services—the record contains evidence that escrow inspections cost money, and that some companies other than Terminix do charge for initial non-escrow inspections. Order Denying Pl. Mot. for Class Cert., Doc 49 at 3 (discussing flat rate charged for escrow inspections); Decl. of Dennis Patzer in Oppo. to Def. Mot. for Partial Summ. J. ("Patzer Decl."), Hersh Decl. Ex. G, ¶ 23 (stating personal knowledge of such companies operating

9

in California).[11] Defendants themselves treat termite inspections as nonexempt nonsales work on certain occasions, when they pay salaried employees to perform reinspections. Depo. of Helio Costa, Hersh Decl., Ex. J, TR 13:18–13:20, 17:15–17:18. The inspection is not a free sample of a product being sold, and it is not a demonstration or sample of a service being sold.[12] Rather, it is a distinct service performed for free as a sort of loss leader, in order for the company to get a foot in the door. *Cf. Keyes Motors, Inc. v. Div. of Labor Standards Enforcement*, 197 Cal. App. 3d 557, 564 (1987) ("It may be true that parts and labor are ultimately sold because mechanics diagnose the need for additional repairs. However, this diagnosis and recommendation is no more 'salesmanship' than a plumber's diagnosis and recommendation that an additional pipe is needed to make a repair. Put simply, a mechanic performs labor, not sales.").

Defendants rely primarily on *Walsh v. IKON Office Solutions, Inc.*, 148 Cal. App. 4th 1440 (2007), to support their argument that Coursey's manner of inspection and subjective intent are relevant to the question of whether an inspection is a "sales activity." In *Walsh*, as here, there were several tasks that each class member performed, and the parties disagreed about whether each task was a sales activity or not. The appeals court affirmed the decertification of a class action, where the trial court had been concerned that it would need to consider "the manner in which" different employees performed the tasks

---

[11] Plaintiff Coursey and defendants each object to evidence submitted by the other in support of and in opposition to this motion: Coursey objects to the reports of Llyod Aubrey and Andris A. Zoltners, and defendants object to portions of Coursey's declaration and to all of the declaration of Dennis Patzer, which they have also moved to strike. Compendium of Pl. Evidentiary Objections (Doc. 182); Def. Compendium of Evidentiary Objections (Doc. 184). With the exception of this single citation, none of the objected to evidence would impact the Court's analysis, and therefore the Court need not rule on the evidentiary objections.

As for defendants' motion to strike, defendants object to the Patzer Declaration because (1) he is an expert whom they were not allowed to depose and (2) he is not a percipient witness. With regard to the particular paragraph upon which the Court relies, Mr. Patzer is in fact a percipient witness. *See* Patzer Decl. ¶ 23 ("I have worked for termite companies that always charged a fee for an inspection and did not offer free inspections. I am also aware of California termite companies that regularly charge for inspections."). The Court DENIES defendants' motion to strike these two sentences of paragraph 23, and the remainder of defendants' motion to strike is DENIED as moot.

[12] This contrasts categorically with defendants' example of a vacuum demonstration. Even if the demonstrator were to clean the prospective client's entire house for free, a service for which the client might have been willing to pay, the demonstrator would be using the actual vacuum cleaner he is trying to sell. It also contrasts with, for example, a makeup salesperson who organizes a party in order to bring together a large group of prospective purchasers, and then who gives out free samples of the makeup and/or performs free demonstrations of how to use the makeup being sold.

10

1  in order to determine whether that particular employee spent any time performing a sales activity while
2  performing the core tasks. *Id.* at 1460–61.

3         The *Walsh* case is not particularly helpful here, as this Court is being asked to calculate time
4  Coursey spent selling certain services and time spent performing a different service. In *Walsh*, the
5  plaintiffs sold document copy services and also provided those same document copy services. *Id.* at
6  1444. The *Walsh* court had the difficult job of categorizing tasks that could be seen as incidental to both
7  the sale and the performance of that single service. Not all of the "tasks" that the plaintiffs in *Walsh*
8  asked the court to categorize were distinct activities like a termite inspection. Some, like performing
9  pick-ups and drop-offs, are more analogous to an inspection visit than an inspection. While an
10  employee's treatment of an inspection visit as an opportunity to make a sale might be relevant to the
11  question of whether *any* time spent during the inspection visit constituted sales activity, it is not relevant
12  to the question of whether the actual inspection is a sales activity.[13]

13         Terminix also argues that the language and structure of California's pest control laws make clear
14  that pest inspections and pest control sales are integrally intertwined. It is true that the statute defines
15  "Structural pest control field representative" as "any individual who is licensed by the board to *secure*
16  *structural pest control work*, identify infestations or infections, make inspections, apply pesticides,
17  submit bids for *or otherwise contract*, on behalf of a registered company." Cal. Bus. & Prof. Code §
18  8507 (emphasis added). But this does not somehow transform termite inspections into sales activity.
19  A better reading of the statute is that California has put into place a law intended to protect consumers
20  from certain sales tactics, including the performance of partial, subpar, dangerous, or misleading
21  inspections provided for the sole purpose of inducing property owners to pay for costly services that
22  they may not need. *See Varanelli v. Structural Pest Control Bd.*, 1 Cal. App. 3d 217, 223–24 (1969)
23  ("The Legislature may have believed that direct person-to-person contact between a representative of
24  the licensee and the home owner was bound to engender a discussion of the technical aspects of
25  structural pest control; that unlicensed solicitors would tend to exceed their instructions in order to bring

---

[13] Moreover, it is not clear whether the *Walsh* court considered the employees' subjective intent directly relevant to whether they were engaged in "sales activity," or only relevant inasmuch as it would be evidence of what they actually did when they were, for example, picking up and dropping off documents.

11

in customers; that companies might employ solicitors who are not well instructed; that solicitors might tend to make misleading statements and offer technical advice; and that unlicensed solicitors might not meet the character requirements imposed upon operators and field representatives."). Thus, the law contemplates the reality of, and regulates, companies that try to convert a property owner's interest in having his property inspected for termites into a more lucrative situation where the property owner purchases more costly services. The law permits a company to operate on such a model, and it permits the company to use one person as both an inspector and a salesperson, as long as that employee performs effective inspections and is well trained. *See id.* at 220 ("[T]he Legislature may well have concluded from past selling practices in the structural pest control field that to protect the public only persons of established character and knowledge should be permitted to solicit or otherwise attempt to secure pest control work on behalf of licensed operators.").

If the statutory structure speaks at all to the questions at issue in this case, it is to say that termite inspections are *distinct* from sales activities. The statutory scheme requires the termite inspection, even if it is being offered as a promotion, to be a full and complete detection service offered before a property owner purchases any prevention or removal service. *See* Cal. Bus. & Prof. Code § 8514 ("No registered company shall commence work on a contract, or sign, issue, or deliver any documents expressing an opinion or statement relating to the control of household pests, or wood destroying pests or organisms until an inspection has been made."). Compare this to the example provided by defendant, of a home alarm system salesperson who shows a homeowner the points of vulnerability and explains how an alarm system might protect the homeowner. In the absence of regulations like California's pest control laws, a court would have a more difficult time separating the purported inspection from the sales pitch; certainly it would be difficult for home alarm salespeople to attempt to bring a class action, as each employee might conduct his inspection and sales pitch with greater or lesser precision and overlap, as he sees fit.

Terminix capitalizes on demand for on-site inspections by training its inspectors to sell related but distinct services. This business model might induce inspectors to think about sales at all times. It might induce an inspector like Coursey to be particularly personable during the inspection, or to invite the property owner along on the inspections to that the property owner can see how thorough and careful

the inspector is. This is perfectly permissible. But it does not transform the "intrinsically nonexempt nonsales work" of inspection into sales activity.

Terminix also argues that inspectors bear the "key indicia of outside sales status," citing a test articulated in a case out of the Federal District Court for the Western District of Michigan. *See Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 756-58 (W.D. Mich. 2003). This test has been used by federal courts called upon to interpret California law in cases brought against pharmaceutical companies, in order to determine whether the task of inducing doctors to write prescriptions, or to commit to write prescriptions, could be considered sales activity even though the employee "never literally exchanged pharmaceuticals for consideration." *See Brody v. AstraZeneca Pharmaceuticals, LP*, No. CV 06-6862 ABC (MANx), 2008 WL 6953957, * 8 (C.D. Cal. , June 11, 2008); *see also Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1262 (C.D. Cal. 2007). This Court is faced with a very different situation: an employee who clearly sells actual services at certain times, but who at other times performs a distinct service that is not a demonstration or sample of a service being sold.[14]

Defendants' motion for partial summary judgment depends on a finding that the time Coursey spends inspecting is time she spends "selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Cal. Code Regs, tit. 8, § 11010(2)(J). The Court reaches the opposite conclusion. Defendants' motion is DENIED.

---

[14] Nor is it clear that the Ninth Circuit will approve of the *Brody* and *Barnick* courts' use of the *Nielsen* test to answer any questions of California law, let alone this particular question, given the differences between the California law's quantitative approach and federal law's qualitative approach to defining outside salespeople. Rather than approving of the importation of the *Nielsen* test, the Ninth Circuit certified the underlying question about the exempt status of these pharmaceutical company employees under California law to the California Supreme Court. *See D'Este v. Bayer Corp.*, 565 F.3d 1119 (9th Cir. 2009) (certifying question); *Barnick v. Wyeth*, case no. 07-56684 (9th Cir. May 5, 2009) (withdrawing from submission pending the California Supreme Court's decision whether to accept certification of the questions presented in the order filed in *D'Este v. Bayer Corp.*). The California Supreme Court denied the request, referring the Ninth Circuit to its opinion in *Ramirez. See* Joint Rep. Giving the Court Notice of the Cal. Supreme Ct. Decision to Deny This Court's Order Certifying Determinative Questions of Law, *D'Este v. Bayer Corp.*, case no. 07-56577 (9th Cir. June 17, 2009). The Ninth Circuit is now holding *D'Este* and *Barnick* for the issuance of a California Supreme Court opinion in *Harris v. Superior Court*, a case about a different classification question that arose in *D'Este*. *See, e.g., D'Este v. Bayer Corp.*, case no. 07-56577 (9th Cir. July 13, 2009) (withdrawing from submission pending the issuance of the mandate in *Harris v. Superior Court*, No. S15655, *review granted by* 171 P.3d 545 (Cal. 2007)).

## CONCLUSION

For the foregoing reasons and for good cause shown, defendants' motion for partial summary judgment is DENIED. (Doc. 79.) Defendants' motion to strike is DENIED. (Doc. 170.)

**IT IS SO ORDERED.**

Dated: June 20, 2011

SUSAN ILLSTON
United States District Judge