1   Joan B. Tucker Fife  (SBN:  144572)
    jfife@winston.com
2   Mari Overbeck (SBN: 261707)
    moverbeck@winston.com
3   WINSTON & STRAWN LLP
    101 California Street
4   San Francisco, CA  94111-5894
    Telephone:    415-591-1000
5   Facsimile:     415-591-1400

6   Amanda C. Sommerfeld (SBN 185052)
    asommerf@winston.com
7   Monique Ngo-Bonnici (SBN:  241315)
    mbonnici@winston.com
8   WINSTON & STRAWN LLP
    333 South Grand Avenue, 38th Floor
9   Los Angeles, CA 90071-1543
    Telephone:    213-615-1700
10  Facsimile:     213-615-1750

11  Attorneys for Defendants

12              **UNITED STATES DISTRICT COURT**

13           **NORTHERN DISTRICT OF CALIFORNIA**

14              **SAN FRANCISCO DIVISION**

15

16  RUBEN PABLO and BONNIE COURSEY, On      **Case No. 08-3894-SI**
    Behalf Of Themselves And All Others Similarly
17  Situated,                                **The Honorable Susan Illston**

18              Plaintiffs,                  **NOTICE OF MOTION AND MOTION OF
                                             DEFENDANTS TO PRECLUDE CLASS
19       v.                                  CERTIFICATION IN LIGHT OF COURT
                                             ORDERS RE PARTIAL SUMMARY
20  SERVICEMASTER GLOBAL HOLDINGS,           JUDGMENT AND ARBITRATION, AND
    INC.; THE SERVICEMASTER COMPANY,         SUPREME COURT AUTHORITY IN
21  INC.; THE TERMINIX INTERNATIONAL         WAL-MART STORES, INC. V. DUKES
    COMPANY, L.P., and TERMINIX              AND AT&T MOBILITY, LLC V.
22  INTERNATIONAL, INC., and DOES 1-20,      CONCEPCION**
    inclusive,
23                                           DATE:  August 5, 2011
                Defendants.                  TIME:   9:00 a.m.
24                                           CTRM:  10

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

---

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE
PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................2

II.    ISSUES TO BE DECIDED .................................................................................2

III.   FACTUAL BACKGROUND ...............................................................................3

       A.    Terminix and Putative Class Members Have Entered Into Various Arbitration Agreements. ........................................................................3

       B.    The Court Granted Defendants' Motion to Compel Arbitration of Cantu, Carrillo, Cevallos, and Lieberman. .....................................................5

       C.    The Court's Orders Denying Defendants' Motions for Partial Summary Judgment ................................................................................5

IV.    LEGAL DISCUSSION ........................................................................................6

       A.    A Class Cannot Be Certified Because Plaintiffs Cannot Affirmatively Demonstrate Compliance with Rule 23(a)'s Commonality Requirement. ...7

             1.    Plaintiffs' Contention That All OSPs Were Misclassified Cannot Be Resolved In One Stroke. ...............................................................7

             2.    Plaintiffs' Claims For Missed Meal and Rest Periods Are Not Amenable to Common Proof. .........................................................11

             3.    Plaintiffs' Claims for Unreimbursed Business Expenses Cannot Be Resolved by Common Proof. ...........................................................12

             4.    The Court's Orders on Defendants' Two Partial Motions for Summary Judgment Highlight the Fact That There Are No Common Answers to Questions That Would Allow This Court to Resolve Plaintiffs' Claims on a Classwide Basis, Individual Issues Predominate, and Plaintiffs Cannot Demonstrate Superiority ...............................................13

                   a.    The Court's Ruling that Inspections Are Not "Sales" Activity Does Not Resolve Claims on a Classwide Basis. .......................14

                   b.    Resolution of Plaintiffs' Expense Reimbursement Claims Requires a Person-by-Person Analysis. ..................................18

       B.    Defendants' Right to Arbitration Precludes Certification. ..........................20

             1.    Defendants Can Compel Arbitration of OSPs' Individual Claims. ....20

             2.    The Fact That Defendants Can Now Assert Demands for Individual Arbitration of Individual OSPs Precludes Class Certification. ..........21

V.     CONCLUSION ..................................................................................................22

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

i

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................................6

*AT&T Mobility v. Concepcion*,
    563 U.S. ___, 131 S. Ct. 1740 (2011)................................................................ passim

*Bellows v. Midland Credit Management, Inc.*,
    2011 WL 1691323 (S.D. Cal. May 4, 2011)........................................................21

*Blackwell v. SkyWest Airlines, Inc.*,
    245 F.R.D. 453 (S.D. Cal. 2007) ...........................................................................12

*Campbell v. PriceWaterHouseCoopers, LLP*,
    253 F.R.D. 586 (E.D. Cal. 2008) .............................................................................9

*D'Antuono v. Service Road Corp.*,
    2011 WL 2175932 (D. Conn. May 25, 2011) ......................................................21

*Day v. Persels & Associates, LLC*,
    2011 WL 1770300 (M.D. Fla. May 9, 2011) ........................................................21

*Discover Bank v. Superior Court*,
    36 Cal. 4th 148 (2005) ....................................................................................20, 21

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
    42 Cal. 4th 554 (2007) ............................................................................................12

*Hines v. Davidowitz*,
    312 U.S. 52 (1941)...................................................................................................21

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    2011 WL 1753784 (N.D. Cal, May 11, 2011) ......................................................22

*Lopez v. G.A.T. Airline Ground Support, Inc.*,
    2010 WL 3633177 (S.D. Cal. Sept. 13, 2010) ......................................................11

*Marlo v. United Parcel Service, Inc.*,
    639 F.3d 942 (9th Cir. 2011) ....................................................................................6

*Norris-Wilson v. Delta-T Group, Inc.*,
    2010 WL 2196066 (S.D. Cal. 2010).........................................................................6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

ii

*Ramirez v. Yosemite Water Co., Inc.*,
  20 Cal. 4th 785 (1999) ................................................................................ passim

*Sanders v. Robinson Humphrey/American Express, Inc.*,
  1986 U.S. Dist. Lexis 23066 (N.D. Ga. July 8, 1996) ............................................21

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ................................................................6, 8, 9, 16

*Wal-Mart Stores, Inc. v. Dukes*,
  Case No. 10-277, 564 U.S. ___, 2011 WL 2437013 (June 20, 2011) ............................ passim

*Whittington v. Taco Bell of America, Inc.*,
  Case No. 10-01884 (D. Colo. May 11, 2011) ......................................................22

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ......................................................................................2, 6, 22

Fed. R. Civ. P. 23(a) ......................................................................................7

Fed. R. Civ. P. 23(c)(1) ..................................................................................1

Fed. R. Civ. P. 23(c)(1)(A) ..............................................................................6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

iii

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 5, 2011, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 10 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA  94102, Defendants ServiceMaster Global Holdings, Inc., The ServiceMaster Company, Inc., Terminix International Company, L.P., and Terminix International, Inc. ("Defendants"), will and hereby do move for an order precluding any class from being certified in this action in light of this Court's orders on partial summary judgment as to Plaintiff Coursey and related Plaintiff Bahr's claims and on Defendants' motions to compel arbitration, and in light of recent Supreme Court authority in *Wal-Mart Stores, Inc. v. Dukes* and *AT&T Mobility, LLC v. Concepcion*.

This motion is made pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure on the grounds that a class cannot be certified in this matter.

This motion is based on this notice, the attached memorandum of points and authorities, declaration and exhibits, the records and documents in the Court's file in this case and the related cases, and any oral argument that the Court may permit.


Dated: June 26, 2011                                            WINSTON & STRAWN LLP


                                             By      /s Joan B. Tucker Fife
                                                      _____
                                                       Joan B. Tucker Fife
                                                     Attorneys For Defendants,
                                                     SERVICEMASTER GLOBAL HOLDINGS,
                                                     INC., THE SERVICEMASTER COMPANY,
                                                     INC., THE TERMINIX INTERNATIONAL
                                                     COMPANY, L.P., AND TERMINIX
                                                     INTERNATIONAL, INC.

Winston & Strawn LLP<br>101 California Street<br>San Francisco, CA 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Since this Court took Plaintiffs' motion for class certification under submission on March 18, 2011, the following five events have occurred:  1) the Supreme Court issued a pivotal decision on the enforceability of arbitration agreements in *AT&T Mobility v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740 (2011) ("AT&T Mobility"); 2) this Court compelled arbitration of four plaintiffs in the related case of *Morse et al. v. ServiceMaster Global Holdings, Inc., et al.*, Case No. 10-628 ("*Morse*"), and there are 28 other motions to compel arbitration pending in related cases; 3) the Supreme Court issued its long-awaited decision interpreting class action standards under Rule 23 in *Wal-Mart Stores, Inc. v. Dukes*, Case No. 10-277, 564 U.S. ___, 2011 WL 2437013 (June 20, 2011) ("*Wal-Mart*"); 4) this Court denied Defendants' partial summary judgment motion as to plaintiff Bonnie Coursey's individual claim for overtime pay; and 5) this Court denied Defendants' partial summary judgment motion in the related *Morse* case against individual John Bahr, for expense reimbursement.  All of these events profoundly impact the class certification analysis.

For these additional reasons, as well as the reasons set forth more fully in Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification, incorporated here by reference (*see* Docket No. 150), and this Court's earlier Order denying class certification (*see* Docket No. 49), Defendants respectfully move to preclude class certification.

### II.   ISSUES TO BE DECIDED

This motion presents the following issues for the Court: (1) whether, in light of *Wal-Mart*, this Court's orders denying Defendants' summary judgment as to Coursey's overtime claim and as to related plaintiff Bahr's expense reimbursement claim demonstrate that commonality is not present and that individual issues in fact predominate over common questions; and (2) whether the required elements of Rule 23 are lacking because, as this Court has concluded, putative class members are subject to various arbitration agreements that require them to resolve their claims arising out of their employment in binding arbitration.

2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

## III.   FACTUAL BACKGROUND

### A.   Terminix and Putative Class Members Have Entered Into Various Arbitration Agreements.

Plaintiffs seek to represent a class of approximately 1,600 Outside Sales Professionsals ("OSPs") in their claims against Defendants, including claims for unpaid wages, meal and rest period premiums, and unreimbursed business expenses.

As Plaintiffs concede, Terminix routinely uses, and has used, various agreements by which its employees agree to submit all employment related disputes to final and binding arbitration. Plaintiffs do not dispute that OSPs are subject to binding arbitration.  (*See Ribeiro v. ServiceMaster Global Holdings, Inc., et al.*, Case No. 09-5154 ("*Ribeiro*"), Docket No. 63, p. 6:16-18; *Hayes v. ServiceMaster Global Holdings, Inc., et al.*, Case No. 10-3887 ("*Hayes*"), Docket No. 68, p. 5:16-19.)

Victor Charles, Terminix's Human Resources Business Partner, stated in a declaration that "For at least the past eight years, Terminix has utilized a standard Arbitration Agreement" and "Terminix gives this agreement to employees to execute in conjunction with the Confidentiality/Non-Compete Agreement."  (*Hayes*, Docket No. 46, ¶¶ 1, 5, 6.)  Section 10 of the Confidentiality/Non-Compete Agreement is labeled "Governing Law; Arbitration" and states that "any and all controversies between them will be submitted for resolution to binding arbitration in accordance with the attached Arbitration Agreement, which is incorporated herein by reference.  The parties understand and agree that arbitration will be the exclusive form for resolving disputes between them, including statutory claims and all disputes arising out of the employment relationship and the termination of such relationship."  (*Id.* at Ex. C.)  The Arbitration Agreement states that "Any dispute arising out of Employee's employment and/or formation of employment with Employer will be submitted to binding arbitration."  (*Id.* at Ex. B.)

OSPs also have agreed to submit employment related disputes to arbitration as part of Defendants' internal dispute resolution program, "We Listen."  (*Id.*, Docket No. 45, Ex. A.) Terminix introduced the "We Listen" program on January 1, 2009.  The "We Listen" program sets

3

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

forth five steps for Terminix employees to take to resolve employment grievances; the final step in the "We Listen" program is to engage in binding arbitration. (*See Hayes*, Docket No. 45, Ex. A.) In January 2009, Terminix sent a copy of the "We Listen" program brochure to all existing employees. In connection with the introduction of the program, all of Terminix's branch managers were required to facilitate meetings at their respective branches to provide an overview of the program for existing employees. Branch managers completed this training throughout January and February of 2009. Human Resource Managers and/or Training Specialists now train all newly hired Terminix associates on the "We Listen" program as part of Terminix's "Aspire" training, and "We Listen" currently is incorporated into Terminix's Employee Handbook. (*Id.*)

For example, Hector Cantu, a putative class member and plaintiff in the related *Hayes* case, signed an arbitration agreement on November 6, 2001 that states that "[a]ny dispute arising out of Employee's employment with Employer, including termination of employment and all statutory claims, will be submitted to binding arbitration." (*Hayes*, Docket No. 36, Ex. B.)

Juan Carrillo, another putative class member and plaintiff in the related *Hayes* case, signed an identical arbitration agreement on the same day. (*Id.*, Docket No. 42, Ex. B.) Gary Lieberman, also a putative class member and plaintiff in the related *Hayes* case, signed an identical arbitration agreement on November 21, 2001. (*Id.*, Docket No. 39, Ex. B.)

At some point after January 4, 2007, Juan Cevallos, a putative class member and plaintiff in the related *Hayes* case signed (but did not date) a confidentiality/non-compete agreement. (*Id.*, Docket No. 46, Ex. C.) Section 10 of the agreement is labeled "Governing Law; Arbitration" and states that "any and all controversies between them will be submitted for resolution to binding arbitration in accordance with the attached Arbitration Agreement, which is incorporated herein by reference. The parties understand and agree that arbitration will be the exclusive form for resolving disputes between them, including statutory claims and all disputes arising out of the employment relationship and the termination of such relationship." (*Id.*) Additionally, on February 13, 2010, plaintiff Cevallos signed a "We Listen Acknowledgment Form," acknowledging that he was given a corporate booklet about Terminix's internal dispute resolution program, and also stating that "I

4

understand that if I have an employment-related dispute, including any dispute surrounding separation of my employment, it will be submitted to binding arbitration." (*Id.*, Docket No. 45, Ex. A.)

B.   The Court Granted Defendants' Motion to Compel Arbitration of Cantu, Carrillo, Cevallos, and Lieberman.

On May 18, 2011, Defendants moved to compel arbitration of Cantu's claims. (*Hayes*, Docket No. 35.) On May 20, 2011, Defendants moved to compel arbitration of the claims of plaintiffs Carrillo, Cevallos and Lieberman. (*Id.*, Docket Nos. 38, 41, 44.)

On June 22, 2011, the Court granted Defendants' motion to compel arbitration of the claims of these four putative class members. (*Hayes*, Docket No. 93.) Motions to compel arbitration with respect to 28 additional spin-off plaintiffs currently are pending before this Court. (Case No. 10-3887, Docket Nos. 47, 48, 55, 58, 61, 64; Case No. 09-5150, Docket Nos. 51, 54; Case No. 09-5153, Docket Nos. 51, 54; Case No. 09-5154, Docket Nos. 56, 59; Case No. 09-5148, Docket No. 53; Case No. 10-628, Docket Nos. 73, 76, 79, 80, 85, 88, 91, 94, 97, 100, 103, 106, 109, 112, 115.) Defendants have demanded that other related plaintiffs/putative class members submit their claims to arbitration, and will be filing motions to compel arbitration on those plaintiffs shortly. (Declaration of Joan B. Tucker Fife ("Fife Decl."), ¶24.)

C.   The Court's Orders Denying Defendants' Motions for Partial Summary Judgment.

Defendants' moved for partial summary judgment as to Plaintiff Coursey's overtime wages claim, asserting that it was undisputed that she was engaged in exempt activity for the majority of her working time. In its Order dated June 20, 2011, the Court concluded that Defendants failed to meet their burden of proof because, if physical inspections are removed from the list of exempt sales activities, then Defendants did not show that more than 51% of her time was spent in exempt sales work. (*See* Docket No. 203.)

Defendants also moved for partial summary judgment as to related Plaintiff Bahr's claim for expense reimbursement in the *Morse* case. On June 22, 2011, the Court denied the motion,

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

5

concluding that Defendants' earlier overpayments to Bahr could not be used to compensate him for later underpayments, and that there were disputed questions of material fact as to whether Defendants knew or had reason to know that Bahr had incurred "necessary" business-related expenses for which he was not reimbursed.  (*See Morse*, Docket No. 72.)  As discussed more fully below, the Court's orders ably demonstrate why these issues may not be resolved on a classwide basis based on common proof under the principles enumerated in *Wal-Mart*, as well as the other cases discussed in Defendants' Opposition to Plaintiffs' Motion for Class Certification.  (*See* Docket No. 150.)

## IV.   LEGAL DISCUSSION

Courts in this Circuit and elsewhere have recognized the propriety of preemptive motions to deny class certification.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009) ("district courts throughout the nation have considered defendants' 'preemptive' motions to deny certification") (citations omitted); *see also Norris-Wilson v. Delta-T Group, Inc.*, 2010 WL 2196066, at *1 n.1 (S.D. Cal. 2010) ("Nothing in the plain language of Rule 23(c)(1)(A) either vests Plaintiff with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question") (*citing Vinole*, 571 F.3d at 939-40)  Irrespective of which party makes the motion, plaintiffs always bear the burden of establishing the certification requirements of Rule 23.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("parties seeking class certification must show that the action is maintainable … .").  Even if the issue of class certification thus comes before the Court on Defendants' motion, the burden remains on Plaintiffs to prove that each of the required elements for class certification under Rule 23 has been satisfied.  *See Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).

On June 20, 2011, the Supreme Court issued its pivotal decision reversing the certification of a putative class of Wal-Mart employees, and provided guidance to the parties on the heavy **evidentiary** burden Plaintiffs Pablo and Coursey must meet to certify a class.  The Court held that: "A party seeking class certification … must be prepared to prove that there are *in fact* sufficiently

6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

1   numerous parties, common questions of law or fact, etc. … and that … after a rigorous analysis, that

2   the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, slip op. at 10 (emphasis in original)

3   (citations omitted).  The Court continued:

4               What matters to class certification … is not the raising of common
                'questions' – even in droves – but, rather ***the capacity of a classwide***

5   ***proceeding to generate common answers apt to drive the resolution***
    ***of the litigation***.  Dissimilarities within the proposed class are what

6               have the potential to impede the generation of common answers.

7   *Id.* at 9-10 (emphasis added) (quotations omitted).  Under the guidance of the *Wal-Mart* Court, and

8   the factual and legal issues this Court has identified in its recent Orders denying Defendants'

9   motions for partial summary judgment, Plaintiffs cannot demonstrate that a "classwide proceeding

10  [will] generate common answers apt to drive the resolution of the litigation." *Id.* at 10.

11          The unanimous Court also confirmed that Defendants retain the right to assert individual

12  defenses against putative class members' claims for backpay.  *Id.* at 27.  Here, individual defenses

13  include (but are not limited to) the Defendants' right to enforce (or waive) each individual's

14  agreement to arbitrate his or her claims against them.  The availability of individual arbitration

15  agreements thus renders classwide treatment wholly inappropriate.

16      A.      A Class Cannot Be Certified Because Plaintiffs Cannot Affirmatively

17              Demonstrate Compliance with Rule 23(a)'s Commonality

18              Requirement.

19          1.      Plaintiffs' Contention That All OSPs Were Misclassified Cannot

20                  Be Resolved In One Stroke.

21          Plaintiffs seek to represent approximately 1,600 OSPs who seek backpay and other damages

22  on the grounds that Defendants allegedly unlawfully treated them as exempt from overtime.  The

23  critical question is whether Plaintiffs have provided evidence that the harm they allege (their

24  treatment as exempt) resulted from conduct or circumstances whose illegality or other viability as a

25  basis for relief can be determined on a classwide basis.

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

7

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

1   To establish this critical predicate for class certification, Plaintiffs must "affirmatively

2   demonstrate" (*Wal-Mart*, slip op. at 10) that they can prove as fact, based on competent evidence,

3   either that each and every OSP spent and/or spends at least 51% of his or her work time each week

4   engaged in non-exempt duties, or that a common policy applies equally to the entire class and rigidly

5   requires all OSPs to spend more than 51% of their work time each week engaged in non-exempt

6   duties.  *See Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785 (1999) (for an individual to be

7   exempt from overtime under California's outside sales exemption, he must spend more than 50% of

8   his worktime away from the employer's principal place of business engaged in sales activities); *see*

9   *also, Vinole*, 571 F.3d at 945 (court must "conduct an individualized analysis of the way each

10  employee actually spends his or her time," and "determine how much of that work is exempt").

11       Plaintiffs cannot meet their burden, as clarified by *Wal-Mart*, to affirmatively demonstrate

12  through admissible evidence exactly how OSPs actually spend their time, such that their claims turn

13  on questions to which there are common ***answers*** applicable to every member of the putative class.

14  *Wal-Mart*, slip op. at 10.

15       In fact, Plaintiffs have presented no evidence that would allow this Court to determine that

16  ***all*** OSPs were misclassified pursuant to some common conduct by the defendant.  (*See* Docket Nos.

17  36, 150.)  Instead, Plaintiffs submitted 24 declarations to the Court in support of their motion for

18  class certification (approximately 1 declaration for every 67 putative class members) in which the

19  declarants state in conclusory terms that the "Disputed Activities" make up more than 51% of their

20  working time.  The Supreme Court has held that such conclusory and anecdotal evidence is

21  insufficient to prove that the claims of every single putative class member can be resolved on a

22  classwide basis in a way that will "drive the resolution of the litigation."  *Wal-Mart*, slip op. at 10

23  (citations omitted.)[1]

24

25

26  [1] As an example of the conclusory and inadequate evidence offered by Plaintiffs, each of their
    declarants coyly state that they were expected to schedule 3 to 5 inspections per day, but omit to
27  mention that typically only 1 to 3 actually occurred.  (*See* Footnote 4, *infra*, listing evidence in the
    record that shows that OSPs performed 1 to 3 termite inspections per day.)

28

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE
PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

1     In *Wal-Mart*, the plaintiffs submitted approximately 120 affidavits, from 235 out of 3,400

2  stores.  The Court found that even if every account of alleged discrimination was true, it would not

3  demonstrate that the harm each class member allegedly suffered resulted <u>from the same employment</u>

4  <u>practice or policies</u> by the defendant.  Here too, even if the Court believed each one of Plaintiffs'

5  declarants' declarations, their testimony would not raise an inference that ***all*** OSPs spent their time

6  in a common fashion, such that the Court could certify a class on the exemption issue.  *Wal-Mart*,

7  slip op. at 18.  (As noted in earlier briefing and at oral argument, the Plaintiffs' witnesses themselves

8  conceded that they did not all perform at least 3 inspections each day.  *See* Footnote 4, *infra*.)

9     For example, Plaintiffs may contend that this case is suitable for class treatment because

10  Defendants set a goal for OSPs to conduct a certain number of physical inspections each day, and if

11  one assumes that those physical inspections take up a certain amount of time, and those physical

12  inspections are determined to be non sales, non-exempt activity, then one can assume that a majority

13  of everyone's work days are spent in non-exempt activity.  But not only is there a wide variance of

14  evidence with respect to each of those predicate assumptions (such that they can't be subject to

15  common proof), but the aspirational goal for scheduling a certain number of inspections per day is

16  not the kind of "policy" or "employment practice" that necessarily creates a uniform effect on how

17  all OSPs spend their time (particularly where those goals are not satisfied).  A goal that is not

18  typically met cannot form the basis on which to certify a class without running afoul of the

19  principles that exempt status cannot be determined based solely on a job title or a job description,

20  nor can classwide treatment be based solely on the employer's classwide classification of all

21  employees with the same job title as "exempt."  *See Vinole*, 571 F.3d at  945 ("… a court evaluating

22  the applicability of the outside salesperson exemption must conduct an individualized analysis of the

23  way each employee actually spends his or her time, and not simply review the employer's job

24  description.") (citing *Ramirez*, 20 Cal. 4th 785 (1999)).  Instead, exempt status must be determined

25  based on what each employee actually does.  *Id.* ("… the court examines in an individualized fashion

26  the work actually performed by the employee to determine how much of that work is exempt.")

27  (citing *Campbell v. PriceWaterHouseCoopers, LLP*, 253 F.R.D. 586, 600 (E.D. Cal. 2008)).  In

28

9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

addition, under *Ramirez*, an employer's expectations of the employee, and whether or not those

expectations are *reasonable*, may be considered *only if* the employees claiming misclassification are

seeking to defeat the exemption based on their *failure to meet* the employer's reasonable

expectations.  *Ramirez*, 20 Cal. 4th at 802.

Even though it is not Defendants' burden to demonstrate that class certification is not proper,

Defendants presented evidence of OSPs who spend more than 51% of their time engaged in

activities other than termite inspections,[2] and that the amount of time that some OSPs spent engaging

in the physical inspection varied significantly from day to day, week to week, and between OSPs.[3]

In this Court's last Order denying class certification, it cited to one OSP who testified that he only

conducted one inspection each day, thus clearly spending far less than 51% of his time conducting

inspections—and others have admitted the same.[4] This conflicting evidence demonstrates that there

are no "common answers" to the question of how OSPs spend their time.

---

[2] (All evidence is attached to the Fife Declaration.)  *See e.g.*,
- Peterson Decl. ¶25 (spends 75% of his time engaged in sales activities away from the branch, not including time spent conducting physical inspections and report writing);
- Gonzalez Decl. ¶47 (spends more than half of his time engaged in sales activities away from his home and the office, excluding report writing and inspections when the homeowner does not accompany him);
- Morgan Decl. ¶19 ("In a typical week, I spend about 60-70% of my time engaged in face to face sales, solicitations and other sales related activities in the field");
- Easley Dep. 155:15-156:14 (admitting that he stays in the field when he has cancellations to prospect for new customers).

[3] *See, e.g.*,
- Easley Dep. 172:4-7 (could not give an average time for a physical inspection because there is too much variance from inspection to inspection);
- Rios Dep. 136:16-137:20 (he could never guess how long he would spend at each home because each sales appointment varied from home to home and customer to customer);
- Rios Decl., ¶¶ 37-38 (30 to 45 minutes to inspect 1,100-1,500 square feet homes);
- Sisto Decl., ¶¶ 18-19 (30 to 90 minutes to inspect 1,500-1,700 square feet homes);
- Anniccchiarico Supp. Decl. ¶16 (limited inspections could take as few as 30 minutes to complete, and smallest houses "took over an hour" to do a complete inspection).

[4] Costa Decl. ¶11 (cited by the Court in its first Order denying class certification; Docket No. 49 pp. 8-9.); *see also*, Supplemental Declaration of Frantz Desvarieux (filed in support of Plaintiffs' Motion for Class Certification, Docket No. 156, Ex. HHHH), admitting that there were days when he completed only 2 termite inspections.  *See also*,
- Raja Decl. ¶¶10,11 (goal is to schedule 3 inspections per day, but completes 1 to 3 due to cancellations);
- Saldana Decl. ¶13 ("I often have cancellations . . . it is not uncommon that I have only 1 or 2 sales calls per work day.");
- Estrata Decl. ¶9 (experiences frequent cancellations, sometimes reducing his daily schedule to 1 sales call);

10

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Plaintiffs have failed to "affirmatively demonstrate" that the question of whether each OSP *actually* spent less than 51% of his or her time engaged in exempt duties can yield a common answer that could materially advance the resolution of the litigation. The evidence demonstrates that, quite often, OSPs only had 1 or 2 physical inspections per day, which means that the Court cannot, with one stroke, conclude that all OSPs spent more than half of their working time engaged in what the Plaintiffs consider non-sales, non-exempt work. Without some factual "glue" holding together the alleged reasons for OSPs to spend more than 51% of their time engaged in non-exempt activities, "it will be impossible to say that the examination of all the class members claims for relief will produce a common answer to the crucial question" of whether they were misclassified. *Wal-Mart*, slip op. at 12. *Wal-Mart* instructs that absent this "common answer," Plaintiffs cannot establish commonality, and certification must be denied.

2.   Plaintiffs' Claims For Missed Meal and Rest Periods Are Not Amenable to Common Proof.

In addition to the exempt/non-exempt analysis, if the Court were to conclude that the OSPs were not exempt, then they were entitled to 30 minute duty free meal periods if they worked more than 5 hours in a work day, and a second meal period if they worked more than 10 hours in a work day. Plaintiffs allege that Defendants "denied" them these meal periods, but their anecdotal evidence amounted to the assertion that their *schedules* rendered them too busy to take meal and rest breaks. (*See e.g.*, Plaintiffs' Declarations in Support of Class Certification, Docket Nos. 103-2-103-5, Exs. CC-YY at ¶ 22.) But where, as here, there is substantial evidence demonstrating that, regardless of how many appointments were *scheduled* per day, only 1 to 3 appointments actually *occurred* in a typical day, then whether and why the meal period was missed becomes an impossibly complex factual dispute that cannot be resolved based on common proof.[5] *See, e.g., Lopez v. G.A.T.*

---

- Brandner Dep. 297:13-22 (some OSPs complete only 1-2 sales calls per day).

[5] *See, e.g.*,
- Haan Decl. (attached to Defendant's Compendium of Evidence in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification, Docket No. 151, Ex. 65) (relying on inspection reports to demonstrate that many OSPs conducted far fewer than 3 termite inspections per day);

11

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

*Airline Ground Support, Inc.*, 2010 WL 3633177, *11 (S.D. Cal. Sept. 13, 2010) (finding that individual issues predominate because each individual putative class member would have to prove why he or she missed a meal break); *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (individualized inquiries surrounding particulars of when and why meal periods were missed or shortened renders class treatment inappropriate).

Plaintiffs have presented no evidence that would allow this Court to determine that *all* OSPs were denied meal or rest periods. Each of Plaintiffs' 24 declarations in support of their motion for class certification makes the conclusory statement that their schedules were just 'too full' for breaks. Under *Wal-Mart*, such conclusory and anecdotal evidence is insufficient to prove that the claims of every single putative class member can be resolved on a classwide basis in a way that will "drive the resolution of the litigation." *Wal-Mart*, slip op. at 10 (citations omitted.)   It is inescapable that, in order to adjudicate this claim, the Court will have to examine every day worked by every OSP in the class period, and determine *whether* he or she took a first (and sometimes second) meal period, *when* they took it, whether it was for a *full* 30 minutes, and if not, *whether it was conduct by the Defendants on each particular occasion that caused the short or missed meal period.*  Then the whole analysis must be done all over again with respect to rest periods. After *Wal-Mart*, Plaintiffs' anecdotal evidence on these claims simply cannot sustain a decision certifying a class, as a matter of law.

> 3.   Plaintiffs' Claims for Unreimbursed Business Expenses Cannot Be Resolved by Common Proof.

Plaintiffs also claim that all 1,600 OSPs were not fully reimbursed for their business expenses. (Docket Nos. 29, 41, 101.) Plaintiffs cannot meet their burden to demonstrate how this

---

- Desvariuex Supp. Decl. ¶4 (admitting 2 sales calls per day) (*see* Docket No. 156, Ex. HHHH);
- Saldana Decl. ¶13 ("I often have cancellations. . . it is not uncommon that I have only one or two sales calls per work day.");
- Raja Decl. ¶¶10,11 (goal is to schedule 3 per day, completes 1 to 3 due to cancellations);
- Estrata Decl. ¶9 (experiences frequent cancellations, sometimes reducing his daily schedule to 1 sales call);
- Beas Decl. ¶¶19-20 (completing 4 sales appointments is only a goal.  It is rarely achieved by OSPs.  On average, they complete fewer than 3 per day).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

Court can determine by a method of common proof whether all OSPs were adequately reimbursed pursuant to Defendants' reimbursement policies and practices.

Plaintiffs contend that Defendants' mileage reimbursement policy failed to compensate OSPs because it was "not predicated on actual miles driven." (*See* Docket No. 101, p. 10:18-19.)  Yet the fact that Defendants' policy is not directly tied to miles driven does not make the policy illegal (*see Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007)), nor does it rule out the very real possibility that some putative class members were actually over-reimbursed for their mileage based on this same policy (indeed, at least one putative class member admitted he was overcompensated pursuant to the policy.)[6]  To meet their burden, Plaintiffs must prove that their reimbursement claims depend upon a common contention "of such a nature that … determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart*, slip op. at 9.  Simply stating that Defendants' reimbursement policy is not tied to actual miles driven is not such a contention, as the truth or falsity of this statement does not materially advance the resolution of plaintiffs' claim that OSPs were not actually adequately reimbursed for their miles driven.

Plaintiffs also claim that they were not reimbursed for all tools necessary to perform their work.  But the evidence necessary to determine what tools were provided to each person, what tools were necessary for each person, and who was denied reimbursement for which tool, is impossible to resolve on common proof.

4.  The Court's Orders on Defendants' Two Partial Motions for Summary Judgment Highlight the Fact That There Are No Common Answers to Questions That Would Allow This Court to Resolve Plaintiffs' Claims on a Classwide Basis, Individual Issues Predominate, and Plaintiffs Cannot Demonstrate Superiority.

The rulings on Defendants' motion for partial summary judgment with respect to Coursey and Bahr illustrate that a class cannot be certified in this case.  This Court expressly found that with respect to Bahr's claim for allegedly unreimbursed equipment expenses "there is a genuine dispute

---

[6] Costa Dep. 221:1-3.

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

of material facts" as to his individual claims.  (*Morse*, Docket No. 72, p. 10:6-7.)  Many of the Court's other findings demonstrate the highly-individualized inquiries necessary to determine of each of the over 1,600 OSP's claims, including individualized inquiries into how much time each OSP spent on each work activity each work week, how each OSP performed his or her work activities, the number of miles driven by each OSP each month, the car allowance each OSP received each month, the types and amounts of equipment each OSP was provided throughout his or her employment, whether each OSP made a request for reimbursement for any equipment purchase, whether that request was granted or denied, and if denied, the reasons why.

    a.  *The Court's Ruling that Inspections Are Not "Sales"*

      *Activity Does Not Resolve Claims on a Classwide Basis*.

    This Court disagreed with Defendants, "that the time Coursey spends inspecting is not time she spends 'selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities."  (*See* Docket No. 203, p. 13:15-17.)  This finding was made on the evidence presented by the parties as to Coursey's individual claims and viewing the evidence in the light most favorable to her, the opposing party.[7]

    This Court framed the issue as follows: "The parties agree that the essential question here is whether Coursey's termite inspections are 'sales activities' or not.  If they are, then Coursey spent over half of her work day performing sales activities.  If they are not, then she did not."  (Docket No. 203, p. 8:19-20.)[8]  The Court's finding that inspections are not sales activities does not materially advance this Court's resolution of the issue of whether *all* OSPs were classified correctly as exempt "in one stroke."  The Court's finding could only be determinative of class issues if Plaintiffs also provided uncontrovertable evidence that all OSPs spent the same proportion of their working time as Coursey conducting termite inspections.  *See Wal-Mart*, slip op. at 10 (class treatment is not appropriate unless plaintiffs can prove through the proffer of competent evidence that their claims

---

[7] Defendants' respectfully disagree with this conclusion and reserve and do not waive the right to challenge it.

[8] Defendants disagree with this characterization of this issue; however, it is not material to the issues here – whether Plaintiffs' claims can be resolved on a classwide basis. They cannot.

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

depend upon a common contention of "such a nature that . . . determination of its truth or falsity will resolve an issue that is central to validity of each of the claims in one stroke").  Plaintiffs have not done so.

To the contrary, as noted above and in Defendants' Opposition to Plaintiffs' Motion for Class Certification (Docket No. 150), there is ample evidence that not all OSPs spent the same amount of time as Coursey conducting termite inspections, and there is ample evidence that not all OSPs spent more than half their work days engaged in non-exempt activities.  According to Coursey, at the beginning of her employment she was required to have at least three inspections per day, and later in her employment she was required to have four per day.  (Docket No. 203, p. 5:1-12.)  During the "swarm" season of March to June or July, Coursey typically had between three and six sales appointments per day."  (Docket No. 203, p. 5:12-14.)  She claimed that inspections could take 90 minutes to two hours each.  (Docket No. 203, p. 5:12-14.)  Thus Coursey could spend between 4.5 and 12 hours each day conducting inspections.

In contrast, some OSPs testified that they spent as little as 30 minutes on some inspections,[9] and some testified that they only conducted one or two inspections each day.[10]  Indeed, this Court recognized in its first Order denying class certification that "[t]he declarations submitted by both parties reflect substantial variation in how inspectors spend their time."  (See Docket No. 49 p. 9:8-

---

[9] See, e.g.,
- Anniccchiarico Supp. Decl. ¶16 (limited inspections could take as few as 30 minutes to complete, and smallest houses "took over an hour" to do a complete inspection);
- Rios Decl., ¶¶ 37-38 (30 to 45 minutes to inspect 1,100-1,500 square feet homes);
- Sisto Decl., ¶¶ 18-19 (30 to 90 minutes to inspect 1,500-1,700 square feet homes).

[10] See, e.g.,
- Haan Decl. (attached to Defendant's Compendium of Evidence in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification, Docket No. 151, Ex. 65) (relying on inspection reports to demonstrate that many OSPs conducted far fewer than 3 termite inspections per day);
- Desvariuex Supp. Decl. ¶4 (admitting 2 sales calls per day) (see Docket No. 156, Ex. HHHH);
- Estrata Decl., ¶9 (experiences frequent cancellations, sometimes reducing his daily schedule to one sales call);
- Saldana Decl., ¶13 ("I often have cancellations . . . it is not uncommon that I have only one or two sales calls per work day.");
- Janes Decl. ¶8 ("It is not uncommon that I only have one or two sales calls to complete in a work day.");
- Raja Decl. ¶¶10, 11 (completes 1 to 3 inspections per day due to cancellations).

15

9.) Thus, some OSPs could spend as little as 30 minutes each day conducting inspections, far less than the 4.5 to 12 hours Coursey allegedly spent in the same activity.[11]

The resolution (at least for purposes of Coursey) of the issue of whether inspections are exempt sales activities does not drive the resolution of the litigation, because the answer to that question does not yield a common answer to the question of how much time every other OSP spent conducting termite inspections. Accordingly, whether inspections are or are not exempt activity is not a common question upon which certification of Plaintiffs' claims can be granted. *Wal-Mart*, slip op. at p. 9-10 ("What matters to class certification . . . is not the raising of common 'questions' . . . but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.")

In its ruling, the Court stated that "Defendants do not argue that they have a realistic requirement that inspectors spend over half their time performing sales activities if termite inspections are not included, however." (Docket No. 203, fn. 10.) Defendants in fact *do* have the expectation that their OSPs spend over half their time performing sales activities other than physical inspections – if those OSPs have only 1 or 2 inspections occurring per day. Nonetheless, whether Defendants have a realistic requirement that OSPs spend over half their working time performing sales activities is not dispositive of the certification issue: what is dispositive is whether *in fact* all OSPs actually spend more than half their time engaged in sales activities. As explained in Section IV. A. 1. above, Defendants' realistic requirements only come into play if an OSP seeks to defeat the exemption by: 1) failing to spend more than half of his or her working time engaged in exempt activities; and 2) is failing to meet the employer's reasonable job requirements. *See Ramirez*, 20 Cal. 4th 785 at 802. The primary inquiry is always: how does the employee spend his or her working time? *See, e.g.*, *Id.* at 802; *Vinole*, 571 F.3d at 945. And here, the evidence demonstrates that some OSPs spent more than half of their working time engaged in sales activities, ***even if***

---

[11] The effect of the termite "swarm season" on hours worked and inspections performed can be profound. This means that there could be patterns of weeks or months of either very few inspections per day – or very many.

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

*inspections are excluded*.[12]  Thus, to the extent the Court believes that Defendants do not contend that individualized inquires are no longer necessary if inspections are not sales, the Court is mistaken.

There are additional dissimilarities between Coursey and other putative class members that change the equation for each person, thus eliminating the possibility of applying the assumption of common proof to yield a common answer as to all OSPs.  For example, Coursey attended sales meetings almost every morning.  "The meetings took place at the Terminix office, lasted for approximately half an hour, and often started late."  (Docket No. 203, p. 5:3-7.)  By contrast, other OSPs did not spend approximately half an hour of each work day attending sales meetings.  Not all branch managers held daily staff meetings.[13]  Some OSPs did not attend staff meetings, even though they worked in branches with daily meetings.[14]  Other branch managers held daily staff meetings during part of the class period, but not throughout the class period.[15]  Again, individual analysis will be required to determine how much time, if any, each OSP spent attending daily staff meetings.  Staff meetings are just one of many itemized tasks that some OSPs participate in for different amounts of time – or don't participate in at all.  Perhaps the largest variable is drive time – which

---

[12] *See, e.g.,*
- Peterson Decl. ¶25 (spends 75% of his time engaged in sales activities away from the branch, not including time spent conducting physical inspections and report writing);
- Gonzalez Decl. ¶47 (spends more than half of his time engaged in sales activities away from his home and the office, excluding report writing and inspections when the homeowner does not accompany him);
- Morgan Decl. ¶19 ("In a typical week, I spend about 60-70% of my time engaged in face to face sales, solicitations and other sales related activities in the field").

[13] Capwell Decl., ¶28 ("Since I have been a branch managers, I have only required my OSPs, including Mr. Van Vorce, to attend morning sales meetings once per week.")

[14] Beas Decl., ¶22 ("[T]here are at least two OSPs in my branch who must take their children to school in the morning.  These individuals are never required to attend the morning sales meetings.")

[15] Cook Decl., ¶18 ("When I first became the branch manager of the Long Beach branch, I required my OSPs to attend daily morning sales meetings at the branch.  These meetings typically started at 7:30 a.m. and lasted between 30 and 40 minutes.  In approximately June 2010, I scaled back the morning meetings to only twice a week so that my OSPs could capitalize on spending as much time in the field as possible.  The length of the twice weekly meetings remained the same (i.e., 30-40 minutes each)"); Jimbo Decl., ¶12 ("The frequency and length of weekly meetings that OSPs in my branches have had to attend has varied.  When I was in charge of sales, we typically had a 15-30 minute morning meeting everyday, which I expected my OSPs to attend at 8:00 a.m.  In my current branch, the San Bernardino branch, I see the sales manager hold morning meetings only once a week for about one hour per meeting.").

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

1   still must be apportioned for each person depending on the proportion of exempt and non-exempt

2   activity that takes place at *each destination* of the day.  *See Ramirez*, 20 Cal. 4th at 801.

3          b.      *Resolution of Plaintiffs' Expense Reimbursement Claims*

4                  *Requires a Person-by-Person Analysis.*

5          The Court's ruling on Defendants' motion for partial summary judgment on Bahr's mileage

6   reimbursement claim ably demonstrates why Plaintiffs' expense reimbursement claims cannot be

7   resolved on a classwide basis.[16]  The Court concluded that Defendants were not entitled to summary

8   judgment on Bahr's unreimbursed mileage claim because, although he was, in total,

9   *overcompensated* (assuming, as the parties did for the purpose of the motion for partial summary

10  judgment *only* that the IRS rate was appropriate), there were some months in which the

11  reimbursement calculated at the IRS rate was less than his actual mileage expense.  (*Morse*, Docket

12  No. 72, p. 4:10-13, 5:15-16, 7:19:20.)  In Bahr's case, the Court did not consider the initial

13  overpayments to Bahr as advances against future expense reimbursements.  Instead the Court

14  concluded that in some months, Bahr was not fully compensated.  The Court left open the possibility

15  of "whether and when *later overpayments* can be used to compensate a worker for an *earlier*

16  *underpayment*."  (*Id.* at p. 7, fn. 2.)

17         In light of these conclusions as to Bahr, the trier of fact will ultimately have to analyze each

18  OSP's monthly reimbursement amount against his or her actual expenses for each month, to

19  determine whether in each month the OSP was underpaid or overpaid, or paid correctly.[17]  Then, if

20  later overpayments can make up for earlier underpayments, the trier of fact will be required to

21  determine if the OSP was overpaid in any later month(s) and reconcile those overpayments with

---

22  [16] Defendants respectfully disagree with the Court's conclusions and reserve and do not waive the
    right to challenge them.

23  [17] *See, e.g.*,

24     ▪ Gonzales Decl., ¶48 ("this amount has always more than covered by transportation
         expenses");

25     ▪ Annicchiarico Decl., ¶49 ("I believe that I have been appropriately reimbursed for all of my
         transportation costs by Terminix.  Each month I receive a varying gas reimbursement based
         on my sales");

26     ▪ Cusing Decl., ¶26 ("Although I do not drive a company car, Terminix adequately covers my
27       transportation costs.  Although I do not know the exact formula that Terminix uses, I always
         feel that it adequately covers my automobile and fuel costs.").

18

28  **DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE
    PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

prior underpayments.  This type of person by person analysis defeats the existence of even a single

common question that would allow this Court to resolve Plaintiffs' mileage reimbursement claim on

a classwide basis.  *Wal-Mart*, slip op. at 19.

Similarly, the Court's ruling that "a genuine dispute of material facts" exists which precludes

summary adjudication of Bahr's equipment reimbursement claim precisely summarizes why a class

cannot be certified on this claim.  (Case No. 10-628, Docket No. 72, p. 10:6-7.)  While "Bahr has

presented necessary evidence that Terminix either knew or had reason to know that he had incurred

reimbursable 'necessary' business expenses, but that Terminix failed to indemnify him," Plaintiffs

cannot present common evidence of the expenses allegedly incurred by each OSP that would "drive

the resolution of the litigation." (*Id.* at p. 10:2-4); *Wal-Mart*, slip op. at 10.

Plaintiffs have not presented, and cannot present, common evidence that all OSPs (1)

incurred necessary business expenses in purchasing equipment, (2) Defendants either knew or had

reason to know that they incurred such expenses, and (3) Defendants failed to indemnify all OSPs.

To the contrary, many OSPs testified that they were provided all equipment necessary for them to

perform their jobs, and do not claim that they requested reimbursements which were denied.[18]  Thus,

under *Wal-Mart*, Plaintiffs cannot demonstrate that common proof will generate accurate, common

answers as to tool reimbursement.

For example, Bahr presented evidence that "[h]e was told by his manager that he needed

certain other tools, including a good flashlight, and additional protective covering. He understood

that he was required to purchase these other tools himself."  (Case No. 10-628, Docket No. 72, p.

8:13-15.)  By contrast, other employees were provided with flashlights, and did not purchase

flashlights, or other equipment themselves.[19]

---

[18] Rios Dep. 85:9-86:14, 88:4-89:25, 90:9-22; 93:14-21 (received tools and equipment he needed and requested from Defendants, and never asked for and was never denied an expense reimbursement).
[19] *See, e.g.*,
- Bergren Dep. 385:5-15 (he was provided with a crawl suit, flash light, batteries and gloves, and other items);
- Rios Dep. 85:9-86:14, 88:4-89:25, 90:9-22; 93:14-21 (received tools and equipment he needed and requested from Defendants, and never asked for and was never denied an expense reimbursement).

19

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

Thus, consistent with this Court's ruling on Defendants' motion for partial summary judgment as to Bahr's expense reimbursement claim, the number of factual questions, to which there are no common answers, preclude an order certifying a class.

B.  <u>Defendants' Right to Arbitration Precludes Certification.</u>

1.  <u>Defendants Can Compel Arbitration of OSPs' Individual Claims.</u>

Class certification is inappropriate because Defendants have the right to demand that OSPs arbitrate his or her claims against them.  As a result of *AT&T Mobility,* it is now clear that California employers have a right to *individual* arbitration of employment claims in most situations. Previously, under *Discover Bank v. Superior Court,* 36 Cal. 4th 148 (2005) ("*Discover Bank*"), class action waivers in arbitration agreements largely were prohibited in California, and class-wide arbitrations, even where not expressly agreed to, were permitted.  *See AT&T Mobility, LLC*, --- U.S. ---, 131 S. Ct. at 1750 (although the *Discover Bank* rule does not require class-wide arbitration, it allows any party to a contract to demand it *ex post*).  In *AT&T Mobility*, the Supreme Court held that: "[c]lass arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA."  *AT&T Mobility v. Concepcion*, --- U.S. ---, 131 S. Ct. 1740 at 1751. "Because it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' California's *Discover Bank* rule is preempted by the FAA."  *Id.* at 1753 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (internal citation omitted).)  As a result of *AT&T Mobility*, Defendants have the flexibility, and the right, to demand individual arbitration.

Accordingly, on May 6, 2011, just days after the Supreme Court's pivotal *AT&T Mobility* decision, Defendants advised counsel for Plaintiffs that they would demand arbitration of the claims of certain of the named plaintiffs in the related cases.  (Case No. 10-3887, Docket No. 37, Ex. A.) On May 18, 2011, Defendants began moving to compel arbitration of the named plaintiffs.  On June 22, 2011, this Court granted in part the first of those motions to compel.  (*Id.*, Docket No. 93.) Twenty-eight more are pending.  More arbitrations have been demanded.

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE
PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

2. <u>The Fact That Defendants Can Now Assert Demands for Individual Arbitration of Individual OSPs Precludes Class Certification.</u>

A class should not be certified, because Plaintiffs concede OSPs have agreed to arbitrate their claims against Defendants.  This Court has recognized the various types of agreements requiring arbitration Defendants used during the class period.  (*See* Case No. 10-3887, Docket No. 93 pp. 2-3.) Defendants have the right to determine whether to demand individual arbitration of the OSPs' individual claims at issue in the class Plaintiffs seek to certify.  *See, e.g.*, *Wal-Mart*, slip op. at 27 (a defendant must be "entitled to litigate its statutory defenses to individual claims")*; AT&T Mobility,* 131 S. Ct. at 1751 (class arbitration, to the extent it is manufactured by *Discover Bank*, is preempted by the FAA.)  With respect to the pending motions to compel arbitration, Plaintiffs have argued that Defendants waived their right to compel arbitration based on their conduct.  Defendants dispute that they have waived any rights as to any particular agreement or person.  Nonetheless, any individual against whom Defendants seek to compel arbitration is entitled to make an argument for waiver, and the resolution of that dispute creates individualized inquiries that render class certification inappropriate.

In decisions following *AT&T Mobility*, courts consistently have compelled individual arbitration of claims in putative class actions if the defendant(s) demanded it, and <u>denied</u> class treatment of the claims.  *See D'Antuono v. Service Road Corp*., 2011 WL 2175932 (D. Conn. May 25, 2011) (compelling arbitration and striking plaintiffs' class and collective action allegations because plaintiffs were subject to arbitration agreements); *Day v. Persels & Associates, LLC*, 2011 WL 1770300, *7 (M.D. Fla. May 9, 2011) (compelling individual arbitration of claims in a putative class action and staying the action, noting that plaintiff acknowledged that *AT&T Mobility* defeated her argument that the class action waiver invalidated her arbitration agreement); *Bellows v. Midland Credit Management, Inc.*, 2011 WL 1691323 (S.D. Cal. May 4, 2011) (finding an arbitration agreement with a class action waiver enforceable, and compelling the plaintiff to arbitration defeated the class.); *see also*, *Sanders v. Robinson Humphrey/American Express, Inc.*, 1986 U.S. Dist. Lexis

21

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111

1   23066, at *18 (N.D. Ga. July 8, 1996) (denying class certification where at least some putative class

2   members are subject to arbitration agreements.)

3          If a class is certified, Defendants have the right to determine whether to demand arbitration

4   of the individual class members.  Plaintiffs do not dispute, and this Court has recognized that "[f]or

5   at least the past eight years, Terminix has utilized a standard Arbitration Agreement" and "Terminix

6   gives this agreement to employees to execute" and that Terminix has distributed a booklet about its

7   internal dispute resolution program which states "I understand that if I have an employment-related

8   dispute, including any dispute surrounding separation of my employment, it will be submitted to

9   binding arbitration."  (Case No. 10-3887, Docket No. 93, p. 3:2-13.)  Thus, to the extent Defendants

10  decide to demand arbitration of individual OSPs, the OSPs for whom Defendants choose to demand

11  arbitration will be compelled to binding arbitration of their claims against Defendants, pursuant to

12  their arbitration agreements, including one that this Court already has enforced.  *See In re TFT-LCD*

13  *(Flat Panel) Antitrust Litigation*, 2011 WL 1753784, at *4 (a party can only move to compel the

14  individual arbitrations of putative class members after the certification of a class); *see e.g.*,

15  *Whittington v. Taco Bell of America, Inc.*, Case No. 10-01884 (D. Colo. May 11, 2011) (same).

16         In addition to the reasons cited in Defendants' Opposition to Plaintiffs' Motion for Class

17  Certification, this is an additional reason why Plaintiffs cannot meet the requirements of Rule 23,

18  because, *inter alia*, they cannot show commonality, typicality, predominance, or superiority.

19  V.     **CONCLUSION**

20         For each of the foregoing reasons, Defendants respectfully request that this Court issue an

21  order precluding certification of each of Plaintiffs' claims.

22

23

24

25

26

27

28

22

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Dated: June 26, 2011

WINSTON & STRAWN LLP


By    /s Joan B. Tucker Fife
                Joan B. Tucker Fife
                Attorneys For Defendants,
SERVICEMASTER GLOBAL HOLDINGS,
INC., THE SERVICEMASTER COMPANY,
INC., THE TERMINIX INTERNATIONAL
COMPANY, L.P., AND TERMINIX
INTERNATIONAL, INC.

**DEFENDANTS' MOTION TO PRECLUDE CLASS CERTIFICATION IN LIGHT OF COURT ORDERS RE PARTIAL SUMMARY JUDGMENT AND SUPREME COURT AUTHORITY – Case No. 08-3894**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111